IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **JENNIFER DOOHAN,** | § § § | |
| Plaintiff, | § § | |
| v. | § § | |
| **EXXONMOBIL RESEARCH & ENGINEERING,** | § § § § | CIVIL ACTION NO. _____ <br><br> **JURY TRIAL DEMANDED** |
| Defendant. | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, Plaintiff Jennifer Doohan (hereafter referred to as "Plaintiff" or "Doohan"), by counsel and brings this action for violations of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, for gender and pregnancy discrimination and retaliation, the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000ek, and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, (the "ADA") complaining of Defendant Exxonmobil Research & Engineering (hereafter referred to as "Defendant" or "Exxonmobil") and respectfully shows the Court as follows:

### I.

### PARTIES

1.01.   Jennifer Doohan is an individual, who is a citizen and resident of the State of Texas, who may be contacted through her undersigned counsel of record.

1.02.   Defendant Exxonmobil Research & Engineering is a Texas Foreign For-Profit Corporation with its principal place of business located at 800 Bell Street, Houston, Texas 77002.

Defendant's agent for service of process in the State of Texas is Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## I.

## JURISDICTION AND VENUE

2.01. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331.

2.02. Venue for all causes of action stated herein lies in the Southern District of Texas because the Defendant resides in this District and because a substantial part of the events alleged in this Complaint took place within this District. *See* 28 U.S.C. § 1391(b). Plaintiff's EEOC charge was filed and pursued in the Dallas District office of the EEOC. Plaintiff received her Notice of Right to Sue and has timely filed this lawsuit.

## III.

## FACTUAL ALLEGATIONS

3.01. Plaintiff was hired as a contractor in November, 2014 at Defendant. On or about February, 2016 Plaintiff was hired as a permanent employee.

3.02 During 2017 Plaintiff worked on the "Cost Champions" project under Rob Bacon.

3.03 Also in 2017 Plaintiff graduated with her MBA.

3.04 In January, 2018 Plaintiff was promoted to planning analyst in Technology Planning under Jenny Johnson and in the same group as future supervisor, Carrie Jasek.

3.05 Plaintiff told her supervisor, Jenny Johnson she was pregnant in January, 2018.

3.06 In 2018 Plaintiff worked closely with Carrie Jasek due to Plaintiff's involvement with PIE (internal system) which Ms. Jasek was in charge of.

3.07 In June, 2018 Plaintiff had a positive review with previous position since

EADS/PDS (annual reviews) run from April of the prior year to March of the current year.

  3.08 In July, 2018 Plaintiff delivered her baby.

  3.09 In October, 2018 Plaintiff went back to work part-time at the office and part-time at home.

  3.10 In January, 2019 Plaintiff returned to the office full time.

  3.11 When Plaintiff returned to the office full time Carrie Jasek became Plaintiff's new supervisor.

  3.12 In March, 2019 Plaintiff had to prepare her EADS/PDS for review. Plaintiff went back and forth with Ms. Jasek and Ms. Johnson on what to put on the the document. Plaintiff was told to put under improvement "data accuracy" issues need to be improved.

  3.13 In June, 2019 Plaintiff was placed in the middle for ranking.

  3.14 From July to November, 2019 Ms. Jasek double checked Plaintiff's work.

  3.15 In November, 2019 Ms. Jasek stopped checking Plaintiff's work and said it was all good. Plaintifff did not have any data integrity issues and could start sending work directly to requesters.

  3.16 During 2019 – 2020 Plaintiff was still sending her work to Ms. Jasek in case Ms. Jasek wanted to look at it and was making doubly sure she was "OK" with Plaintiff's work. Ms. Jasek told Plaintiff to just send it in to the requester without checking because she trusted Plaintiff's work.

  3.17 In January, 2020 Plaintiff told Ms. Jasek she was pregnant with her second child.

  3.18 At the time Plaintiff told her supervisor of her pregnancy, Ms. Jasek told Plaintiff that she had come back to work from her maternity leave in 4 weeks instead of 6 weeks in order to climb a Polyethylene stack that turns over every few years. Ms. Jaskek mentioned this a few

times to Plaintiff during her pregnancy.

3.19 In January, 2020 Plaintiff emailed managers of the group to see if they wanted to utilize Plaintiff's skills (Tableau and data analysis) at the request and instruction of her supervisor, Ms. Jasek.

3.20 John Roberts was one of the managers that took Plaintiff up on her offer and Plaintiff built him a tableau dashboard. Plaintiff started outreaching for more opportunities.

3.21 In February, 2020 Plaintiff began creating supply chain training packages in order to better her presentation skills.

3.22 In March, 2020 Jason Brinker (Executive Manager) thanked the group on work helping out with the Dallas deck for corporate.

3.23 Also in March, 2020 Plaintiff had to start preparing her EADS/PDS for review. Plaintiff sent it to Ms. Jasek for revisions, Plaintiff made the revisions Ms. Jasek requested and Ms. Jasek said it looked good. There was no mention of Data integrity Issues or any other issues. Plaintiff was given extra projects with Asha and Devika for Plaintiff to lead.

3.24 In April, 2020 Plaintiff was told that other managers were giving Plaintiff positive reviews.

3.25 John Roberts gave Plaintiff a great review in an email.

3.26 In May, 2020 Plaintiff went into labor early and was admitted to the hospital for antepartum care due to PPROM.

3.27 Plaintiff kept Ms. Jasek and other managers informed as to Plaintiff's condition.

3.28 Plaintiff was put on medical leave and could not work after being put on Anepartum care.

3.29 May to November, 2020 Plaintiff and Ms. Jasek discussed Plaintiff's coming back

to work. Plaintiff asked if she could come back part-time but Ms. Jasek said no. So Plaintiff asked if she could use her vacation until it ran out and Ms. Jasek behooved Plaintiff to take her PTTO (Paid Parental Time Off). Plaintiff stayed out until her vacation and everything was used up. Plaintiff thought the reason Ms. Jasek "behooved" Plaintiff to stay out was because Exxon was going to get rid of their maternity benefits outside of the 6 weeks since they already took away their tuition reimbursement benefits. Plaintiff also decided to use up all of her vacation and PTO to spend with her children in case Plaintiff wasn't going to be able to when getting back to work. Plaintiff had no idea she was going to be laid off when she returned or Plaintiff would have stayed off until the beginning of the year.

3.30    During this time Plaintiff was applying to multiple jobs because Plaintiff was seeing if she could find something that would be remote and possibly a better fit for Plaintiff's work/life balance in case Plaintiff was unable to use her PTO and vacation time for Plaintiff's children.

3.31    In November 2020 Plaintiff was told her vacation and PTO had run out.

3.32    On November 17, 2020 Plaintiff began work and was given her EADS/PDS review. Plaintiff was told that she was being given the option to take the PIL (Pay in Lieu) or PIP (Performance Improvement Plan) due to Plaintiff's presentation skills, not reaching out enough, and data integrity. Ms. Jasek said that the PIP would be very difficult for Plaintiff to pass, meaning Plaintiff would fail.

3.33    November 19, 2020 Plaintiff spoke with HR about her options and what they meant. Meghan Hasson (HR) told Plaintiff that PIL would give 3 months pay and job seeking help but Plaintiff would have to agree not to sue in exchange for the pay and help. It seemed like their version of a severance package when England and Australia were given 1 year of pay. The PIP was 3 months of performance improvement based on what the supervisor put down. Ms. Hasson

told Plaintiff that Ms. Jasek had not built the PIP yet and that Ms. Jasek would probably not have the PIP done until after the holidays. Ms. Hasson said that historically employees did not pass the PIP but recently more had passed because their supervisor/manager hinted to the employee that they would more than likely pass the PIP. Plaintiff clarified with Ms. Hasson that Ms. Jasek said the PIP would be very difficult, which meant Plaintiff wouldn't pass it, and therefore would be terminated at the end either way.

3.40   On November 25, 2020 Plaintiff was terminated.

## IV.

### FIRST COUNT

### GENDER AND PREGNANCY DISCRIMINATION AND RETALIATION

4.01.   The foregoing paragraphs of this Complaint are incorporated in this Count as fully as if set forth at length herein.

4.02.   Plaintiff was an employee within the meaning of Title VII and belongs to a class protected under the statute, namely she is female. 42 U.S.C. §2000e(f).

4.03.   Defendant is an employer within the meaning of Title VII. 42 U.S.C. §2000e(b). In particular, Defendant employs more than fifteen (15) employees within the current calendar year.

4.04.   Defendant intentionally discriminated against Plaintiff because of her gender in violation of Title VII by discriminating against her on the basis of pregnancy, childbirth, or related medical conditions. 42 U.S.C. §2000e(k). Furthermore, Defendant retaliated against Plaintiff by putting her on a PIL or PIP, Plaintiff's choice and firing her.

4.05.   Plaintiff was terminated without good reason. Furthermore, Defendant was aware that Plaintiff was pregnant and needed accommodations. Plaintiff never complained to HR because it was well known that if you complained to HR then an employee would be retaliated against.

Defendant denied Plaintiff's request for accommodations and placed her at risk. Plaintiff did go to HR to discuss parental options.

4.06. All conditions precedent to filing this action for discrimination under federal law have been met. Plaintiff timely filed her charge of discrimination and has received her Notice of Right to Sue within 90 days of filing this original action. (*See* Exhibit A).

4.07. Defendant violated Title VII by discharging Plaintiff and/or discriminating against Plaintiff with compensation, terms, conditions or privileges of employment because of Plaintiff's sex. Discrimination was a motivating factor in Defendant's actions toward Plaintiff. Defendant retaliated against Plaintiff by firing her after she complained of discrimination, harassment and failure to accommodate.

4.08. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered significant financial loss, including the loss of her job and the loss of wages, salary and employment benefits.

4.09. Such discrimination and retaliation by Defendant against Plaintiff was intentional. Accordingly, Plaintiff is entitled to recover damages from Defendant for back pay, front pay, past and future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Further, this discrimination was done with malice or with reckless indifference to Plaintiff's federally protected rights. Plaintiff is therefore entitled to recover punitive damages.

4.10. Plaintiff is entitled to an award of attorneys' fees and costs under Title VII as well as reimbursement of expert witness fees.

V.

## SECOND COUNT

## AMERICANS WITH DISABILITIES ACT OF 1990 AS AMENDED

5.01. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs and incorporates the same as if set forth at length herein.

5.02. Plaintiff has filed a charge of disability discrimination with the EEOC. Plaintiff files this Complaint within 90 days of her receipt of the Notice of Right to Sue from the EEOC.

5.03. Defendant was an "employer" under the ADA, as amended 42 U.S.C. § 12111(5)(A).

5.04. While employed by Defendant, Plaintiff suffered from a disability under the statutory definition provided in the ADA, 42 U.S.C. § 12102(2), because Plaintiff had a physical impairment that substantially limited one or more of her major life activities, a record of impairment, and/or was regarded as having such an impairment by Defendant. Plaintiff had a record of impairment because she took time off from work for treatment of her diagnosed health condition. Plaintiff was regarded as having a disability when she disclosed to her employer her medical diagnoses.

5.05. While employed by Defendant, Plaintiff was a "qualified individual with a disability" under the ADA, 42 U.S.C. § 12111(8). Plaintiff was and is a qualified individual for the job in question. With reasonable accommodation and schedule adjustments, Plaintiff could have performed, and can perform, the essential functions of her job.

5.06. Defendant terminated Plaintiff because of her disability.

5.07. Defendant treated Plaintiff less favorably than its non-disabled employees.

5.08. Defendant violated the ADA, 42 U.S.C. § 12112, by terminating Plaintiff and/or discriminating against her in connection with her advancement, compensation, job training, and other terms, conditions, and privileges of her employment because of Plaintiff's disability.

5.09. Such discrimination by Defendant against Plaintiff was intentional. Accordingly, Plaintiff is entitled to recover damages from Defendant for back pay, front pay, past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses. Further, this discrimination was done with malice or with reckless indifference to Plaintiff's federally protected rights. Plaintiff is therefore also entitled to recover punitive damages.

5.10. Plaintiff is entitled to an award of attorneys' fees, expert fees, and costs under the ADA as amended.

## VI.

## JURY DEMAND

6.01. PLAINTIFF DEMANDS A TRIAL BY JURY.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff have and recover the following relief against Defendant:

1. Judgment for back pay and front pay and all past and future lost fringe benefits;

2. Judgment for actual damages in the amount of past and future lost earnings and benefits, and damages to past and future earnings capacity;

3. Compensatory damages for the humiliation, damage to reputation, mental and emotional distress, and pain and suffering Plaintiff has experienced and endured as a result of the discriminatory actions of Defendant;

4. The costs and expenses incurred by Plaintiff in seeking new employment;

5. Damages for past and future mental anguish and emotional distress and damages to reputation;

6. Economic and reliance damages,

7. Prejudgment and postjudgment interest at the maximum legal rate;

8. Attorneys' fees;

9. Expert's fees;

10. All costs of court; and

11. Such other and further relief to which Plaintiff may be justly entitled.

Dated: this 3rd day of May, 2021.

Respectfully submitted,

**KILGORE & KILGORE, PLLC**


By: /s/ W.D. Masterson
     W.D. MASTERSON
     State Bar No. 13184000

3109 Carlisle
Dallas, TX  75204-2471
(214) 969-9099 - Telephone
(214) 953-0133 - Fax
wdm@kilgorelaw.com

**ATTORNEYS FOR PLAINTIFF
JENNIFER DOOHAN**

# EXHIBIT A

EEOC Form 161-B (11/2020)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**NOTICE OF RIGHT TO SUE** (ISSUED ON REQUEST)

| | |
|---|---|
| To: Jennifer Doohan<br>7210 Wedgehollow Ct<br>USA<br>Klein, TX 77389 | From: Houston District Office<br>Mickey Leland Building<br>1919 Smith Street, 7th Floor<br>Houston, TX 77002 |

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 460-2021-00820 | Shirley Almaguer,<br>Investigator | (346) 327-7693 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Shirley Almaguer *Digitally signed by Shirley Almaguer Date: 2021.02.24 08:18:59 -06'00'* for    February 26, 2021

Enclosures(s)    Rayford O. Irvin,    *(Date Issued)*
District Director

cc:    Daniel Woodfield    TWC-Civil Rights Division
Manager EEO/Compliance    Lowell Keig, Executive Director
EXXON MOBIL    101 East 15th Street, Room T 144
1735 Hughes Landing Blvd. #HHL W-02-N297    Austin, TX 78778
The Woodlands, TX 77380

Enclosure with EEOC
Form 161-B (11/2020)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit *before 7/1/10* -- not 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, please make your review request **within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

**IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.**

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):

- **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
- **Only one** major life activity need be substantially limited.
- With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
- An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active.**
- An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

"Regarded as" coverage:
- An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
- "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
- A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.